UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTOPHER DZIERZANOWSKI,

                        Plaintiff,

v.                                                          5:14-CV-1141
                                                            (GTS)
CAROLYN W. COLVIN,
Commissioner of Social Security,

                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

OLINSKY LAW GROUP                               HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
One Park Place
300 S. State Street, Suite 420
Syracuse, NY 10202

U.S. SOCIAL SECURITY ADMIN.                     KRISTINA D. COHN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Christopher

Dzierzanowski ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions

for judgment on the pleadings. (Dkt. Nos. 12-13.) For the reasons set forth below, Plaintiff's

motion for judgment on the pleadings is granted and Defendant's motion for judgment on the

pleadings is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on April 8, 1968.  He completed the 12th grade of high school.  Plaintiff has worked as an assembler and an environmental service aide.  Generally, Plaintiff's alleged disability consists of diabetes, kidney disease, stomach disorder, vision loss, and depression.  Plaintiff's alleged disability onset date is November 19, 2009, and his date last insured is December 31, 2014.

### B. Procedural History

On May 13, 2011, Plaintiff applied for Social Security Disability Insurance Benefits.  Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ").  On November 20, 2012, Plaintiff appeared before the ALJ, Jennifer Gale Smith.  (T. 31-66.)  On January 31, 2013, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 11-30.)  On August 12, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-4.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following seven findings of fact and conclusions of law.  (T. 16-25.)  First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2014, and had not engaged in substantial gainful activity since November 19, 2009, his alleged onset date.  (T. 16.)  Second, the ALJ found that Plaintiff's diabetes, diabetic retinopathy, depressive disorder, and panic disorder without agoraphobia are severe impairments, but that Plaintiff's hypertension, dyslipidemia, staph infection, abdominal

pain, stomach problems, status post cataract surgery, chronic kidney disease-stage three, and diabetic neuropathy are not severe impairments. (T. 16-18.) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (T. 18.) The ALJ considered Listing 9.00. (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels. Additionally, the claimant retains the ability to understand and follow simple instructions and directions, perform simple and detailed tasks with supervision and independently, maintain attention and concentration for tasks, regularly attend to a routine and maintain a schedule, and relate to and interact appropriately with others, but the claimant should have no more than occasional contact with co-workers, supervisors, and the general public. The claimant should avoid exposure to moving machinery and unprotected heights, and the claimant should avoid fine, close-up work involving small objects requiring binocular vision but retains sufficient visual acuity to work with larger objects and avoid workplace hazards.

(T. 20.) Fifth, the ALJ found that Plaintiff is unable to perform his past relevant work as an assembler and an environmental service aide. (T. 23.) Sixth, the ALJ found that Plaintiff is not disabled under the framework of section 204.00 of the Medical-Vocational Guidelines. (T. 24.) Seventh, and finally, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 24-25.)

**D.  The Parties' Briefings on Their Cross-Motions**

Plaintiff makes seven arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in assessing the joint opinion of Plaintiff's mental limitations from treating therapist, Jackqueline Marella, L.C.S.W., and supervising psychiatrist, Golam Mohiuddin, M.D. (Dkt. No. 12, at 10-13 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ failed to reconcile the RFC with the opinions of consultative psychiatric examiner,

Christina Caldwell, Psy.D., and State agency psychiatric consultant, R. Altmansberger, M.D. (*Id.* at 13-15.) Third, Plaintiff argues that the ALJ failed to obtain a medical source statement from treating ophthalmologist, John Sveen, M.D., and that the ALJ's RFC finding as to Plaintiff's visual limitations was unsupported by substantial evidence. (*Id.* at 15-18.) Fourth, Plaintiff argues that the ALJ erred in determining that Plaintiff had no exertional limitations. (*Id.* at 18-20.) Fifth, Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility. (*Id.* at 20-22.) Sixth, Plaintiff argues that the ALJ's step five determination was unsupported by substantial evidence. (*Id.* at 22-24.) Seventh, and finally, Plaintiff argues that the Appeals Council erred when it denied review and determined that additional evidence submitted by Plaintiff did not provide a basis for changing the ALJ's decision. (*Id.* at 24-25.)

Defendant makes five arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ properly assessed the medical opinions of record in formulating the RFC. (Dkt. No. 13, at 5-9 [Def.'s Mem. of Law].) Second, Defendant argues that Plaintiff was not required to obtain a medical source statement from treating ophthalmologist, Dr. Sveen. (*Id.* at 8-9.) Third, Defendant argues that the ALJ properly evaluated Plaintiff's credibility. (*Id.* at 9-12.) Fourth, Defendant argues that the ALJ properly relied upon the Medical-Vocational Rules at step five. (*Id.* at 12-14.) Fifth, Defendant argues that the Appeals Council properly evaluated the new evidence submitted by Plaintiff because the ALJ's decision was not contrary to the weight of the evidence in the current record. (*Id.* at 14-15.)

## II.      RELEVANT LEGAL STANDARD

### A.      Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906

F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act.  20 C.F.R. § 404.1520.  The Supreme

Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482

U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities.  If the claimant suffers such an impairment, the third inquiry
> is whether, based solely on medical evidence, the claimant has an
> impairment which is listed in Appendix 1 of the regulations.  If the
> claimant has such an impairment, the [Commissioner] will consider him
> disabled without considering vocational factors such as age, education,
> and work experience; the [Commissioner] presumes that a claimant who
> is afflicted with a "listed" impairment is unable to perform substantial
> gainful activity.   Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform his past
> work.  Finally, if the claimant is unable to perform his past work, the
> [Commissioner] then determines whether there is other work which the
> claimant could perform.  Under the cases previously discussed, the
> claimant bears the burden of the proof as to the first four steps, while the
> [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord, McIntyre v. Colvin,* 758 F.3d 146,

150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.     ANALYSIS

### A.     Whether the ALJ Erred in Assessing the Joint Opinion of Treating Therapist, Ms. Marella, and Supervising Psychiatrist, Dr. Mohiuddin

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated in Defendant's memorandum of law.  (Dkt. No. 13, at 5-8 [Def.'s Mem. of

Law].)  To those reasons, the Court adds the following analysis.

It is the duty of the ALJ to formulate a plaintiff's RFC.  20 C.F.R. § 404.1545.  RFC is defined as

> what an individual can still do despite his or her limitations . . . .
> Ordinarily, RFC is the individual's maximum remaining ability to do
> sustained work activities in an ordinary work setting on a regular and
> continuing basis, and the RFC assessment must include a discussion
> of the individual's abilities on that basis.  A regular and continuing
> basis means 8 hours a day, for 5 days a week, or an equivalent work
> schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2).  "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work."  *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]).  The ALJ must consider all of the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms.  20 C.F.R. § 404.1545(b)-(e).

The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other sources, such as therapists and social workers, to show how a claimant's impairments may affect his or her ability to work.  20 C.F.R. § 404.1513(c)(d).  Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Under the "treating physician's rule," controlling weight is given to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial

evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given to the opinion of a treating physician, or when assessing other medical opinions, the ALJ should consider the following factors to determine the proper weight: (1) the frequency of the examinations and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

Regulations require an ALJ to set forth the reasons for the weight assigned to a treating physician's opinion. *Shaw*, 221 F.3d at 134. When controlling weight is not given to the opinion of a treating physician, an ALJ's failure to explain the weight given to the opinion of other treating sources or a State agency medical consultant is legal error. *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 425 (W.D.N.Y. 2006); *see also Stytzer v. Astrue*, 07-CV-0811, 2010 WL 3907771, at *7 (N.D.N.Y. Sept. 30, 2010) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the agency]."); *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 295 (W.D.N.Y. 2006) (finding that, because the ALJ failed to afford the treating physician's opinion controlling weight, the opinion of the consultative examiner "takes on particular significance").

In December 2012,[1] treating therapist, Ms. Marella, and supervising psychiatrist, Dr. Mohiuddin from Arise Child and Family Services ("Arise") jointly opined that Plaintiff would be "unable to meet competitive standards" in his abilities to (1) maintain attendance and be punctual within customary, usually strict tolerances, (2) complete a normal workday and workweek without interruptions from psychologically based symptoms, and (3) perform at a consistent pace without an unreasonable number and length of rest periods. (T. 771.) Ms. Marella and Dr. Mohiuddin opined that Plaintiff would be "seriously limited, but not precluded" in his ability to deal with normal work stress. (*Id.*)

The ALJ afforded the opinion very little weight, reasoning that Ms. Marella is a non-acceptable medical source and that Dr. Mohiuddin stated that he had never examined Plaintiff. (T. 23.) Additionally, the ALJ reasoned that the opinion is not consistent with the treatment notes from Arise, which showed that Plaintiff's anger outbursts were improving and that Plaintiff generally got along well with others. (T. 23.) The ALJ noted that Plaintiff received mental health counseling at Arise throughout 2010, 2011, and 2012. (T. 17.) The ALJ noted that, upon initial evaluation at Arise in 2010, Plaintiff was diagnosed with "major depression, single episode, moderate without psychotic features, in remission," and was assessed with a global assessment of functioning ("GAF") score of 60, indicating moderate psychological symptoms.[2] (T. 17.) The ALJ further noted that a July 23, 2012, treatment record observed that Plaintiff's "outbursts have significantly decreased . . . he gets a little irritable from time to time but really nowhere near the intensity or frequency as they were before." (T. 19.)

---

[1]     The medical source statement was signed by Ms. Marella on December 6, 2012, and by Dr. Mohiuddin on December 18, 2012. (T. 772.)

[2]     A GAF score of 51 to 60 indicates moderate symptoms (i.e., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social occupational, or school functioning (i.e., few friends, conflicts with peers or co-workers.) *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000).

First, the ALJ correctly noted that a social worker is not an acceptable medical source under the regulations. 20 C.F.R. § 404.1513(a). An ALJ may consider a social worker's opinion as an "other source" opinion to show the severity of a plaintiff's impairments and how the impairments affect his or her ability to work. 20 C.F.R. § 404.1513(a), (c)-(d). However, an opinion from a social worker is not a medical opinion that is entitled to any particular weight under the regulations. 20 C.F.R. § 404.1513(a), 404.1527(b).

Second, the ALJ properly applied the regulations in evaluating Ms. Marella and Dr. Mohiuddin's opinion. As discussed above, the ALJ considered Ms. Marella and Dr. Mohiuddin's respective professional credentials, examination notes, treating and examining relationship with Plaintiff, and cited inconsistencies between their opinion and other medical evidence in the record pursuant to 20 C.F.R. § 404.1527(c). (T. 17-23.) Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review explicitly each and every factor of the regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where a plaintiff challenged the ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

For these reasons, the ALJ's assessment of the opinion of Ms. Marella and Dr. Mohiuddin was supported by substantial evidence, and remand is not required on this basis.

**B.    Whether the ALJ Failed to Reconcile the RFC with the Opinions of Consultative Psychiatric Examiner, Dr. Caldwell, and State Agency Psychiatric Consultant, Dr. Altmansberger**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, at 5-7 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

On November 9, 2011, consultative examiner, Dr. Caldwell, assessed Plaintiff with depressive disorder and panic disorder without agoraphobia.  (T. 296.)  Dr. Caldwell opined that, despite some limitations in his ability to deal with stress, Plaintiff could follow and understand simple instructions and directions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, and relate adequately with others.  (T. 22-23.)

On November 14, 2011, State agency psychiatric consultant, Dr. Altmansberger, opined that Plaintiff was "capable of performing unskilled, entry-level work in a low-contact setting." (T. 23.)  Dr. Altmansberger rated Plaintiff's abilities in twenty areas of mental functioning.  (T. 512-13.)  Dr. Altmansberger opined that Plaintiff was "not significantly limited" in 15 out of 20 areas of mental functioning, was "moderately limited" in five areas, and identified no areas in which he was "markedly limited."  (T. 512-13.)[3]

The ALJ determined that Plaintiff has the mental RFC to understand and follow simple instructions and directions, perform simple and detailed tasks, maintain attention and concentration, regularly attend to a routine and maintain a schedule, appropriately relate to and interact with others, but that Plaintiff should have no more than occasional contact with co-workers, supervisors, and the general public.  (T. 20.)  In assessing Plaintiff's mental RFC, the ALJ afforded great weight to the opinion from Dr. Caldwell because of her programmatic expertise, her examination of Plaintiff, and the consistency of her opinion with the longitudinal

---

[3] Dr. Altmansberger opined that Plaintiff was "moderately limited" in the abilities to (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (2) work in coordination with or in proximity to others without being distracted by them, (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, (4) accept instructions and respond appropriately to criticism from supervisors, and (5) respond appropriately to changes in the work setting.  (T. 512-13.)

medical evidence in the record. (T. 23.) Additionally, the ALJ afforded significant weight to the opinion of Dr. Altmansberger due to his programmatic expertise and the relative consistency of his opinion with the overall evidence. (*Id.*)

Plaintiff seems to argue that the ALJ failed to explain why she did not adopt the entirety of Dr. Caldwell and Dr. Altmansberger's opinions. (*Id.* at 13.) (Dkt. No. 12, at 13 [Pl.'s Mem. of Law].) However, an ALJ is not required to adhere strictly to the entirety of a source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion). Further, an ALJ is not required "explicitly to reconcile every conflicting shred of medical testimony." *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (finding that the ALJ was not required to reconcile two apparently inconsistent medical opinions; it was sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision).

Accordingly, the ALJ did not err in assessing the opinions from Dr. Caldwell and Dr. Altmansberger in determining Plaintiff's RFC. Therefore, remand is not required on this basis.

### C. Whether the ALJ's RFC Determination that Plaintiff Had No Exertional Limitations Was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11, at 5-9 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels.[4] (T. 20.) The Court finds that the ALJ's RFC finding that Plaintiff had no exertional limitations was supported by substantial evidence, including the medical opinion of Plaintiff's physical limitations provided by consultative examiner, Dr. Ganesh. (T. 489-91.)

On November 2, 2011, Dr. Ganesh diagnosed Plaintiff with diabetes, diabetic retinopathy, status post cataract surgery, history of depression and anxiety, and high blood pressure. (T. 492.) Dr. Ganesh opined that Plaintiff had no gross physical limitation to sitting, standing, walking, or the use of his upper extremities. (*Id.*) Upon examination, Dr. Ganesh observed that Plaintiff had a normal gait and stance, could walk on heels and toes without difficulty, had full range of motion of the cervical and lumbar spine, and had full range of motion and full strength in the upper and lower extremities. (T. 490-91.) Dr. Ganesh observed that Plaintiff's hand and finger dexterity was intact with full grip strength bilaterally, and a neurological exam was normal. (T. 21, 491.)

An ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. § 404.1512(b)(6), 404.1513(c), 404.1527(e); *see also Little v. Colvin*, 14-CV-63, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."); *Cobb v. Comm'r*, 2014 WL 4437566, at *6 (N.D.N.Y. Sept. 9, 2014).

---

[4] Exertional limitations include a claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle. 20 C.F.R. § 404.1569a(b).

For these reasons, the ALJ's determination that Plaintiff had no exertional limitations was supported by substantial evidence, and remand is not required on this basis.

### D.  Whether the ALJ's RFC Determination of Plaintiff's Visual Abilities and Limitations Was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 12, at 15-18 [Pl.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

The ALJ has an affirmative duty to develop a claimant's complete medical history.  20 C.F.R. § 404.1512(d); *Lamay v. Comm'r of Soc. Sec*., 562 F.3d 503, 508-09 (2d Cir. 2009).  By statute, an ALJ is required to develop a claimant's complete medical history for at least twelve months before an application for benefits was filed, "but also to gather such information for a longer period if there [is] reason to believe that the information [is] necessary to reach a decision."  *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998).  This duty exists "[e]ven when a claimant is represented by counsel," due to the "non-adversarial nature of a benefits proceeding."  *DeChirico,* 134 F.3d at 1184; *Lamay*, 562 F.3d at 509.

Recontacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of record.  20 C.F.R. § 404.1420b(c)(1).  Additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1420b(c)(1)-(4); *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).  However, reviewing courts hold that an ALJ is not required to seek additional information absent "obvious gaps" in the administrative record that preclude an informed decision.  *Rosa*, 168 F.3d at 79 n.5; *see also Hart v. Comm'r,* 07-CV-1270 2010 WL 2817479, at *5 (N.D.N.Y. July 16, 2010).

Here, the ALJ determined that Plaintiff's diabetic retinopathy was a severe impairment, and that Plaintiff should avoid close-up work involving small objects requiring binocular vision but retains sufficient visual acuity to work with larger objects and avoid workplace hazards. (T. 16, 20.) However, the ALJ did not cite a medical opinion of Plaintiff's work-related visual abilities and limitations in support of her RFC determination.

Social Security regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of . . . [a plaintiff's] impairment(s), including . . . [a plaintiff's] symptoms, diagnosis and prognosis, what . . . [a plaintiff] can still do despite impairment(s), and . . . [a plaintiff's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

To be sure, the ALJ noted that on, November 9, 2011, consultative examiner, Dr. Ganesh, performed vision testing that showed that Plaintiff had 20/30 bilateral vision on a Snellen chart at 20 feet. (T. 21.) However, the record does not contain an assessment of Plaintiff's work-related visual abilities and restrictions from Dr. Ganesh or any other acceptable medical source.

"The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *accord, Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir. 1999). Moreover, an ALJ cannot assess a plaintiff's RFC based on the ALJ's own interpretation of the medical evidence. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (holding that an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion"); *accord, House v. Astrue*, 11-CV-915, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (holding that remand was necessary where there was no medical source opinion supporting the ALJ's RFC determination).

Here, The ALJ's RFC determination regarding Plaintiff's visual limitations and abilities was not supported by substantial evidence, because the record was insufficient to support such an RFC. Accordingly, remand is required for the ALJ to obtain a consultative visual examination or a medical source statement from an acceptable medical source regarding Plaintiff's visual limitations.

###    E.    Whether the ALJ Erred in Assessing Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, at 5-16 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his statements regarding the intensity, persistence and limiting effects of his symptoms are not fully credible. (T. 21.) In assessing Plaintiff's allegations, the ALJ determined that Plaintiff's complaints are not supported by the evidence of record, including medical evidence and examination notes as well as Plaintiff's activities and certification that he was able to perform work throughout 2011 in order to collect unemployment benefits. (T. 21-23.)

First, the ALJ found that Plaintiff's allegations of disabling symptoms were not well supported by the medical evidence of record. (T. 21-22.) The ALJ noted that, on November 9, 2011, Dr. Ganesh observed that Plaintiff had a normal gait and stance, could walk on heels and toes without difficulty, had full range of motion of the lower and upper extremities, and had

intact hand and finger dexterity with full grip strength bilaterally. (T. 21.) The ALJ noted that Plaintiff testified that he is limited by diabetic neuropathy, yet extensive treatment notes throughout the record showed minimal complaints related to the impairment. (*Id.*) Additionally, the ALJ noted that medical evidence showed that Plaintiff does not always follow recommended medical treatment. (*Id.*)

Second, the ALJ found that Plaintiff's complaints of disabling symptoms and limitations are inconsistent with his daily activities. (T. 21-22.) The ALJ noted that Plaintiff testified that he is often fatigued and has difficulty concentrating, yet a June 2012, treatment note from Arise indicated that Plaintiff's concentration was good, he enjoyed playing poker on the computer at night, and he felt like he had enough energy to do the things he liked to do during the day. (*Id.*) The ALJ noted that Plaintiff testified that diabetic retinopathy was his most significant medical condition, yet he also testified that he watched football and television shows. (T. 21.)

Finally, the ALJ found that Plaintiff's allegations of disabling symptoms were inconsistent with his certification that he was able to work in order to collect unemployment benefits in 2011. (T. 22.) Plaintiff argues that the ALJ "overlooked" Plaintiff's strong work history in the credibility analysis. (Dkt. No. 13, at 5-16 [Def.'s Mem. of Law]). However, the ALJ acknowledged that Plaintiff had a "good work history," but reasoned that Plaintiff's complaints of disabling symptoms were not supported by his certifications that he was able to perform work in order to collect unemployment benefits throughout 2011. (T. 22.)

An ALJ may consider a plaintiff's work history in assessing a plaintiff's credibility. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *5 (July 2, 2006). Additionally, "Courts in the Second Circuit have held that an ALJ may consider evidence that the claimant received unemployment benefits and/or certified that he was ready, willing, and able to work during the

time period for which he claims disability benefits as adverse factors in the ALJ's credibility determination." *Felix v. Astrue*, 11-CV-3697, 2012 WL 3043203, at *10 (E.D.N.Y. July 24, 2012); *accord, House v. Comm'r,* 09-CV-0913, 2012 WL 1029657, at *12 (N.D.N.Y. Feb. 29, 2012), *Frawley v. Colvin,* 13-CV-1567, 2014 WL 6810661, at *11 (N.D.N.Y. Dec. 2, 2014.)

For these reasons, the ALJ properly evaluated Plaintiff's credibility. However, for the reasons discussed above in Part III.D. of this Decision and Order, this matter is being remanded for the ALJ to obtain additional medical evidence. Accordingly, remand is also required for a credibility analysis in light of any new medical evidence obtained.

## F. Whether the ALJ's Determination at Step Five of the Sequential Analysis Was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the negative in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 12, at 18-20 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

At step five of the sequential process, the burden shifts to the Commissioner to establish that there are a significant number of jobs in the national economy that a plaintiff can perform based on his or her RFC, age, education, and past relevant work. 20 C.F.R. § 404.1512(g), 404.1560(c); *Butts v. Barnhart,* 388 F.3d 377, 383 (2d Cir. 2004). The ALJ can usually establish that there is other work that Plaintiff can perform, by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *Baldwin v. Astrue*, 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009).

When a plaintiff suffers from nonexertional limitations that significantly limit his employment opportunities, exclusive reliance on the Grids is inappropriate. *Baldwin*, 2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 [2d Cir. 1986]); *accord, Wanzo v.*

*Comm'r,* 05-CV-1521, 2008 WL 3925542, *4 (N.D.N.Y. Aug. 20, 2008). However, "the mere existence of a non-exertional limitation does not automatically preclude reliance on the guidelines." *Zabala v. Astrue,* 595 F.3d 402, 410-11 (2d Cir. 2010) (citing *Bapp,* 802 F.2d at 603.) "A plaintiff's range of potential employment is significantly limited when he suffers from the 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a [plaintiff's] possible range of work as to deprive him of a meaningful employment opportunity.'" *Baldwin*, 2009 WL 4931363, at *27 (quoting *Bapp*, 802 F.2d at 606).

Here, the ALJ did not obtain the opinion of a vocational expert in determining whether there are jobs in the national economy that Plaintiff can perform. Instead, the ALJ determined that there are jobs in the national economy that Plaintiff can perform, relying solely on the Medical-Vocational guidelines. (T. 24.) The ALJ found that Plaintiff's ability to perform work has been compromised by nonexertional limitations, however the ALJ found that these limitations have little or no effect on the occupational base of unskilled work at all exertional levels. (T. 25.)

For the reasons discussed in Part III.D. of this Decision and Order, this matter is being remanded for the ALJ to obtain additional medical evidence and reassess Plaintiff's visual limitations in the RFC. Accordingly, remand is required for the ALJ to reassess her decision at step five in light of any new medical evidence obtained. Upon remand, the ALJ must also reevaluate whether the range of work Plaintiff can perform based on his combined nonexertional limitations is "so significantly diminished as to require the introduction of vocational testimony." *Bapp*, 802 F.2d at 606.

**G.      Whether the Appeals Council Failed to Consider New and Material Evidence**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 13, at 14-15 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only when it relates to the period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b); HALLEX I–3-3-6, 1993 WL 643129 (Dec. 27, 2012); *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996).  If additional evidence relates to the relevant period, the Appeals Council shall evaluate the entire record, including the new and material evidence submitted, if it finds that the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record.  20 C.F.R. § 404.970(b); HALLEX I–3-3-6; *Paradise v. Comm'r*, 13-CV-0828, 2014 WL 4384230, at *2 (N.D.N.Y. Sept. 3, 2014).  The weight of the evidence means that it is "more likely than not" that the totality of the evidence, including the additional evidence, would change the ALJ's actions, findings, or conclusion.  HALLEX I-3-9-4, 2013 WL 643197 (Mar. 8, 2013).

Here, Plaintiff submitted mental health treatment notes from Arise, dated October 23, 2012, through January 20, 2013.  (T. 4.)  The Appeals Council declined to review the case because, even with the additional evidence submitted, the ALJ's decision was not contrary to the weight of the evidence.  (T. 778-83.)  The additional evidence was duplicative of evidence already contained in the record and considered by the ALJ.  As discussed above in Part III.A. of this Decision and Order, the record contains Plaintiff's treatment records from Arise from 2010 through 2012.  (T. 23.)  The ALJ noted that Plaintiff was assessed with a GAF score of 60 upon his initial evaluation at Arise, indicating moderate psychological symptoms, that Plaintiff's anger

outbursts had improved with treatment, and that Plaintiff generally got along well with others.

(T. 17, 19, 23.)  Based on the medical evidence of record, the ALJ's RFC limited Plaintiff to no

more than occasional contact with co-workers, supervisors, and the general public.  (T. 20.)

For these reasons, the Appeals Council properly concluded that the additional evidence

submitted did not provide a basis for changing the ALJ's decision.  However, this matter is being

remanded for the reasons discussed above in Part III.D. of this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is

**<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is

**<u>DENIED</u>**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. §

405(g), for further proceedings consistent with this Decision and Order.

Dated: February 5, 2016
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge